## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FEDERAL TRADE COMMISSION; and
STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL, DEPARTMENT
OF LEGAL AFFAIRS,

                 Plaintiffs,

vs.                                                              Case No. 6:13-cv-789-Orl-37DAB

VACATION COMMUNICATIONS
GROUP, LLC, a Nevada limited liability
company; GARDNER CLINE L.L.C., a
Florida limited liability company;
SHELDON LEE COHEN, individually
and as an owner, officer, or manager of
Vacation Communications Group, LLC,
and d/b/a Universal Timeshare Sales
Associates and M.G.M. Universal
Timeshares; MARK RUSSELL
GARDNER, individually and as
manager/member of Gardner Cline
L.L.C.; and TAMMIE LYNN CLINE,
individually and as manager/member of
Gardner Cline L.L.C.,

                 Defendants.

_____

### ORDER AND PRELIMINARY INJUNCTION AS TO DEFENDANTS MARK RUSSELL GARDNER, TAMMIE LYNN CLINE, AND GARDNER CLINE L.L.C.

      This cause is before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. 20), filed June 5, 2013. Defendants Mark Russell Gardner, Tammie Lynn Cline, and Gardner Cline L.L.C., who have appeared with counsel in this matter, have stipulated and agreed to the requested relief. (*Id.*) The Court heard argument on Plaintiffs' motion at a hearing held on June 5, 2013, at which Defendants Mark Russell Gardner and Tammie Lynn Cline appeared. (Doc. 23.)

## INTRODUCTION

On May 20, 2013, Plaintiffs, the Federal Trade Commission ("FTC"), and the State of Florida, Office of the Attorney General, Department of Legal Affairs ("the State of Florida"), filed a Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2012), and the Florida Timeshare Resale Accountability Act ("FTRRA"), Section 721.205, Florida Statutes (2012), and moved for an *ex parte* temporary restraining order and other relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. (Docs. 1, 5.)

The Court granted Plaintiffs' motion, entered the requested temporary restraining order, and set a hearing to convert it to a preliminary injunction after notice and an opportunity to be heard had been given to Defendants. (Doc. 9.) Plaintiffs have filed proof of service of the complaint, the motion for an injunction, and all supporting documents on Defendants. (Docs. 13, 14, 17, 21, 22.) Plaintiffs now move to convert the Temporary Restraining Order issued by the Court in this matter to a preliminary injunction.

## STANDARDS

Typically, a "district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing

party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Section 13 of the FTC Act, however, provides that upon "a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond." 15 U.S.C. § 53(b). The "ultimate test" of statutory injunctions such as those brought under Section 13 of the FTCA Act is "whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *Commodity Futures Trading Comm'n v. Wilshire Inv. Mgm't Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008) (reviewing the grant of an injunction issued pursuant to the Commodity Exchange Act). When considering the request for a statutory injunction, the Court should weigh the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations. *Id.*

## DISCUSSION

Plaintiffs have established entitlement to preliminary injunctive relief with regard to Defendants Mark Russell Gardner, Tammie Lynn Cline, and Gardner Cline L.L.C. Plaintiffs submitted evidence and testimony that Defendants worked in conjunction with Defendant Sheldon Lee Cohen in a scheme to defraud timeshare owners. (Docs. 1, 5.) The Court finds, based on these submissions, that Plaintiffs are likely to demonstrate that the scheme violated the FTC Act. The Court also finds that Defendants' acts were not isolated but rather were part of a larger ongoing scheme to defraud consumers.

Notwithstanding their agreement to entry of a preliminary injunction, the Court also finds that Defendants Mark Russell Gardner, Tammie Lynn Cline, and Gardner Cline L.L.C., who are in the business of telemarketing, have not provided any assurances against future violations and have not admitted to the wrongful nature of their conduct. Therefore, upon weighing these factors, the Court concludes that it is the public interest to enjoin Defendants Mark Russell Gardner, Tammie Lynn Cline, and Gardner Cline L.L.C.

Accordingly, it is hereby **ORDERED, ADJUDGED, AND DECREED** the Court **GRANTS** Plaintiffs' motion for preliminary injunction as follows:

<u>Definitions</u>

1.      "Asset" or "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      "Assisting Others" includes, but is not limited to, providing any of the following services to any Person or entity: (1) performing customer service functions including, but not limited to, receiving or responding to consumer complaints; (2) formulating or providing, or arranging for the formulation or provision of, any sales script, other marketing material, or marketing services of any kind; (3) providing names of, or assisting in the generation of, potential customers; (4) providing credit card merchant processing accounts, or otherwise providing access to a billing and collection

system (such as a credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card), or causing any charges to be made to such an account or utilizing such a system; or (5) acting as an officer or director of a business entity.

3.     "Individual Defendants" means Sheldon Lee Cohen, also doing business as Universal Timeshare Sales Associates and M.G.M. Universal Timeshares; Mark Russell Gardner, individually and as manager/member of Gardner Cline L.L.C.; and Tammie Lynn Cline, individually and as manager/member of Gardner Cline L.L.C.; by whatever other names they may be known.

4.     "Corporate Defendants" means Vacation Communications Group, LLC, and Gardner Cline L.L.C. and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities.

5.     "Defendants" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

6.     "Document" or "Documents" means any materials listed in Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data or data compilations, stored in any medium, from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form through detection devices. A draft or non-identical copy is a separate "document" within the meaning of this term.

7.     "Financial Institution" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8.     "Material" means likely to affect a Person's choice of, or conduct regarding, goods or services.

9.     "Person" means a natural Person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

10.    "Plaintiffs" means the Federal Trade Commission ("Commission" or "FTC") and the State of Florida, Office of the Attorney General ("State of Florida").

11.    "Receivership Defendants" means Vacation Communications Group, LLC, Gardner Cline L.L.C., their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known; and Defendant Sheldon Lee Cohen when doing business as Universal Timeshare Sales Associates and M.G.M. Universal Timeshares.

12.    "Receivership Estate" means and includes the estate of the Receivership Defendants created by this Order, and as may be modified or expanded by subsequent orders of this Court, including, but not limited to, all Receivership Defendants' Assets as defined herein, regardless of whether such Assets are held by any Defendant or Individual Defendant, or third party not presently a party to the above-referenced action.

13.    "Stipulating Defendants" means Gardner Cline L.L.C., Mark Russell Gardner, and Tammie Lynn Cline.

14.    "Telemarketing" means any plan, program, or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

15.    "Telemarketing Sales Rule" or "TSR" means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

16.    "Timeshare" or "Timeshare Property" refers to the right of ownership or occupancy in any vacation property or properties (including, but not limited to, condominiums, resorts, campgrounds, and cruise ships) that provides rights-holders with certain periodic usage and/or occupancy rights. The term shall also include "points-based" programs that provide similar ownership and/or occupancy benefits.

## CONDUCT PROHIBITIONS

### I.  PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Stipulating Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, in connection with the telemarketing, advertising, marketing, promoting, offering for sale, or sale of any timeshare rental or resale services, are hereby restrained and enjoined from:

A.    Misrepresenting, or Assisting Others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including, but not limited to:

1.    That Stipulating Defendants have a renter or buyer for a consumer's Timeshare Property who will pay a specified price; or

2.    That Stipulating Defendants will quickly rent or sell a consumer's Timeshare;

B.    Violating, or Assisting Others in violating, any provision of the TSR, including, but not limited to:

1.      Section 310.3(a)(4) of the TSR, 16 C.F.R. § 310.3(a)(4), by making any false or misleading statement to induce any Person to pay for goods or services;

2.      Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), by engaging in, or causing others to engage in, initiating an outbound telephone call to a Person's telephone number on the National Do Not Call Registry in connection with Telemarketing; and

3.      Section 310.8 of the TSR, 16 C.F .R. § 310.8, by initiating or causing others to initiate, in connection with Telemarketing, an outbound telephone call to a telephone number within a given area code when Defendants have not, either directly or through another Person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry;

C.      Violating, or Assisting Others in violating, any provision of the FDUTPA, Chapter 501, Part II, Florida Statues (2012); and

D.      Violating, or Assisting Others in violating, any provision of the Florida Timeshare Resale Accountability Act, Chapter 721, Part I, Florida Statues (2012).

## II.  PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that the Stipulating Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of

them, are hereby restrained and enjoined from:

A.      Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or about whom any Defendant obtained such information in connection with activities alleged in the Complaint; and

B.      Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or about whom any Defendant obtained such information in connection with activities alleged in the Complaint.

*Provided however*, that the Stipulating Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

## ASSET PROVISIONS

### III.  ASSET FREEZE

**IT IS FURTHER ORDERED** that the Stipulating Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A.      Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, automobiles, accounts, contracts, consumer lists, coins, precious metals, artwork, shares of stock, uncashed checks, or other Assets, or any interest therein, wherever located, including any Assets outside the territorial United States, that are:

1.      Owned, controlled or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Stipulating Defendant;

2.      In the actual or constructive possession of any Stipulating Defendant, including, but not limited to, any Assets held for or by any Stipulating Defendant in any account at any bank or savings and loan institution, or any credit card processing agent or agent providing electronic fund transfer services or automated clearing house processing, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other Financial Institution or depository of any kind, either within or outside the territorial United States;

3.      Held by an agent of any Stipulating Defendant as a retainer for the agent's provision of services to any Stipulating Defendant;

4.      Owned or controlled by, or in the actual or constructive possession of, or

otherwise held for the benefit of, any corporation, partnership or other entity directly or indirectly owned, managed or controlled by any Stipulating Defendant, or of which any Stipulating Defendant is an officer, director, member or manager. This includes, but is not limited to, any Asset held by, for, or subject to access by, either of the Stipulating Defendants at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title company, insurance company, commodity trading company, precious metal dealer, payment processor, credit card processor, acquiring bank, merchant bank, independent sales organization, third party processor, payment gateway or other Financial Institution or depository of any kind; or

5.      Held in any account for which any Stipulating Defendant is, or was on the date that this Order was signed, an authorized signatory;

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of, or for the use or benefit of, any Stipulating Defendant, or subject to access by any Stipulating Defendant, or under the control of any Stipulating Defendant;

C.      Incurring charges or cash advances on any credit card, debit card, or line of credit issued in the name, individually or jointly, of any Stipulating Defendant;

D.      Obtaining a personal or secured loan;

E.      Cashing any checks or depositing any payments from customers or clients of Stipulating Defendants; or

F.       Incurring liens or other encumbrances on real property, personal property, or other Asset titled in the name, individually or jointly, of any Stipulating

Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Stipulating Defendant.

Notwithstanding the asset freeze provisions of Section III.A—F above, and upon prior written agreement with Plaintiffs and compliance with Section XV (Financial Statements), *infra*, each Stipulating Defendant may pay his or her individual reasonable, usual, ordinary, and necessary living expenses.

## IV.  DUTIES OF THIRD PARTY ASSET HOLDERS

**IT IS FURTHER ORDERED** that each Financial Institution, business entity, or Person that maintains or has custody or control of any account or other Asset of any Stipulating Defendant, or that at any time since January 1, 2008, has maintained or had custody of any such Asset, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Stipulating Defendant, which is provided with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.     Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the Assets, funds, Documents, or other property held by or under its control, on behalf of any Stipulating Defendant, or for the benefit or use of any Stipulating Defendant, in whole or in part, except as directed by further order of this Court, or by written agreement of Plaintiffs;

B.     Deny Stipulating Defendants access to any safe deposit boxes, commercial mail boxes or storage facilities that are titled in the name, individually or jointly, of any Stipulating Defendant, or otherwise subject to access by any Stipulating Defendant;

C.      Provide to counsel for the Plaintiffs, within five (5) business days of notice of this Order, a sworn statement setting forth:

1.      The identification of each account or Asset titled in the name, individually or jointly, of any Stipulating Defendant; held on behalf of, or for the benefit or use of, any Stipulating Defendant; subject to any Stipulating Defendant's control, including all trust accounts on behalf of any Stipulating Defendant; or to which any Stipulating Defendant is a signatory;

2.      The balance of each such account, or a description and appraisal of the value of each such Asset, as of the close of business on the day on which notice of this Order is received, and, if the account or Asset has been closed or removed, or more than $500 withdrawn or transferred from it within the last one hundred and twenty (120) days, the date of the closure or removal of funds, the total funds removed or transferred, and the name and account number of the Person or entity to whom such account, funds, or other Asset was remitted; and

3.      The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Stipulating Defendant, or is otherwise subject to access or control by any Stipulating Defendant.  If the account, safe deposit box, storage facility, or other Asset has been closed or removed within the last one hundred and twenty (120) days, the date closed or removed and the balance on said date; and

D.      Within five (5) days of a request by Plaintiffs, provide Plaintiffs with copies

of any records or other Documents pertaining to each such account or Asset, including, but not limited to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

Plaintiffs may properly serve this Order on any financial or brokerage institution, business entity or Person that holds, controls or maintains custody of any account or Asset of any Stipulating Defendant or has held, controlled or maintained custody of any account or Asset of any Stipulating Defendant at any time since January 1, 2008, by facsimile transmission, hand delivery, or overnight carrier.

## V.  APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Brian McDowell is appointed to continue as a temporary receiver ("Receiver") for Receivership Defendants and any of their affiliates, subsidiaries, divisions, or sales operations, wherever located, with the full power of an equity receiver.  The Receiver is directed and authorized to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Defendants, including the Individual Defendants, from control of, management of, or participation in the affairs of the Receivership Defendants.  The Receiver shall, however, not interfere with or be privy to the defense of this action;

B.      Take custody, control, and possession of all Assets and Documents of, or in the possession or custody or under the control of, the Receivership Defendants

wherever situated and including, but not limited to, the business premises of the Receivership Defendants.  The Receiver shall have full power to divert mail and to sue for, collect, receive, take possession, hold and manage all Assets and Documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. Provided, however, that, without prior Court approval, the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

C.     Use any means necessary to take possession of and to secure each and every business premises of the Receivership Defendants.  Such steps may include, but are not limited to, any of the following, as the Receiver deems necessary or advisable: (1) serving this Order; (2) completing a written inventory of all receivership Assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, passwords or access codes, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing and videotaping any or all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems, servers, network access, or other means of access to the computer or other records maintained at that location; and (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Defendants. Law enforcement personnel, including, but not limited to, police or sheriffs, may assist

the Receiver in implementing these provisions in order to keep the peace and maintain security.  The Receiver is authorized to provide continued access to any business premises of the Receivership Defendants to law enforcement officers, as he deems fit; and to refer to those law enforcement officers any documents or information that may appear to be relevant to their duties.

D.     Conserve, hold, and manage all Assets of the Receivership Defendants and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing unauthorized transfer, withdrawal, or misapplication of Assets, and including the authority to liquidate or close out any open securities or commodities futures positions of the Receivership Defendants;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

G.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary;

H.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary, in the performance of duties and responsibilities under the authority granted by this Order;

I.     Make payments and disbursements from the receivership estate that are

necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

J.      Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

K.      Take whatever action is necessary to ensure that any web site used by any Defendant for the telemarketing, advertising, marketing, promotion, offering for sale, or sale of Timeshare rental or resale services, including, but not limited to, the websites located at www.universltimesharesa.com and www.vacationcommunicationsgroup.com, prominently displays the following statement:

> The Federal Trade Commission and the State of Florida have filed a lawsuit against Vacation Communications Group, Sheldon Lee Cohen, doing business as Universal Timeshare Sales Associates and M.G.M. Universal Timeshares, Gardner Cline L.L.C., Mark Russell Gardner, and Tammie Lynn Cline alleging that they have engaged in deceptive practices relating to the telemarketing, advertising, marketing, promotion, offering for sale, rental, or resale of timeshares.  The United States District Court for the Middle District of Florida has issued a temporary restraining order prohibiting the alleged practices.  You may obtain additional information directly from the Federal Trade Commission at www.ftc.gov.

Each web site carrying this message shall also provide a hypertext link to the Federal Trade Commission's home page at www.ftc.gov, or another home page designated by counsel for the Federal Trade Commission.

L.      Institute, compromise, adjust, appear in, intervene in, or become party to

such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N.     Continue to conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the businesses profitably and lawfully, if at all; provided that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the Assets of the receivership estate;

O.     Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

P.     Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties;

Q.     Maintain accurate records of all receipts and expenditures made as

Receiver;

R.      Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiffs; and

S.      File reports with the Court on a timely basis.

## VI.  COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that:

A.      Stipulating Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other persons or entities served with a copy of this Order, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

1.      Providing any information to the Receiver that the Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Receiver under this Order;

2.      Providing any password required to access any computer, electronic file, or telephonic data in any medium; and

3.      Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

B.      Stipulating Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or

entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, and all other persons or entities served with a copy of this Order, are hereby restrained and enjoined from directly or indirectly:

1.   Transacting any of the business of the Receivership Defendants;

2.   Destroying, secreting, defacing, mutilating, concealing, altering, transferring, or otherwise disposing of any Document of the Receivership Defendants, including, but not limited to books, records, tapes, discs, accounting data, checks (fronts and backs), correspondence, forms, advertisements, website designs and texts, telemarketing scripts or outlines, brochures, manuals, banking records, customer lists, customer files, customer payment histories, invoices, telephone records, ledgers, payroll records, or other Documents of any kind, including electronically stored information;

3.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Asset owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

4.   Excusing debts owed to the Receivership Defendants;

5.   Failing to notify the Receiver of any Asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or

information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6.    Doing any act or refraining from any act whatsoever to interfere with the Receiver managing, or taking custody, control, or possession of, the Assets or Documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court; or

7.    Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, without prior permission from this Court.

## VII.  COMPENSATION OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, or in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court, and serve on the parties, periodic requests for the payment of such compensation, with the first such request due prior to sixty (60) days after the date of this Order. The Receiver shall not increase the Receiver's fee billed to the Receivership Estate without prior approval of the Court.

## VIII.  BOND

**IT IS FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 65(c), the Receiver is not required to post a bond with the Clerk of this Court.

## IX.  ACCESS TO BUSINESS OFFICES AND RECORDS

**IT IS FURTHER ORDERED** that the Stipulating Defendants, and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, and the Receiver, shall allow the Commission's representatives, agents, and assistants, as well as the Receivership Defendants' representatives, and the Individual Defendants themselves or their representatives, reasonable access to all of Receivership Defendants' business premises, or any other premises where the Receivership Defendants conduct business or telephone sales or customer service operations.

The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Receivership Defendants or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access. The Commission may remove materials from the Receivership Defendants' business premises to inspect, inventory, and copy such materials.

## X.  DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them, or within such time as may be permitted by the Receiver, Stipulating Defendants, or any other person or entity served with a copy of this Order, shall transfer or deliver

possession, custody and control of the following to the Receiver:

A.      All Assets of the Receivership Defendants (including, but not limited to, Desktop and laptop computers and network servers), including Assets subject to repatriation pursuant to Section XIII, infra;

B.      All Documents of the Receivership Defendants, including, but not limited to, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), customer lists, title documents, contracts, accounting data, written or electronic correspondence, advertisements, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, membership records and lists, refund records, receipts, ledgers, personal and business canceled checks and check registers, appointment books, copies of federal, state, or local business, personal income, or property tax returns, and other Documents or records of any kind that relate to the Receivership Defendants' business practices;

C.      All funds and other Assets belonging to members of the public now held by the Receivership Defendants; and

D.      All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property.

## XI.  NON-COMPLIANCE WITH TRANSFERS OR DELIVERY

**IT IS FURTHER ORDERED** that, in the event any person or entity fails to transfer or deliver any Asset or otherwise fails to comply with any provision of this Order

requiring the delivery of Assets, Documents or other things, the Receiver may file *ex parte* an affidavit of non-compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, writs of possession or sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## XII.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that except by leave of this Court, during the pendency of the receivership ordered herein, the Stipulating Defendants and all other persons and entities are hereby stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, or any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

A.      Commencing, prosecuting, continuing or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

B.      Accelerating the due date of any obligation or claimed obligation, filing, perfecting, or enforcing any lien; taking or attempting to take possession, custody or control of any Asset; attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants; or

C.      Doing any act or thing whatsoever to interfere with the Receiver taking

custody, control, possession or management of the Assets or Documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets and Documents of the Receivership Defendants.

*Provided, however*, nothing in this Paragraph shall prohibit any law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Defendants to enforce such governmental unit's police or regulatory power;

*Provided further*, that, except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an order of this Court with regard to the relief requested.

### XIII.  REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that, within five (5) business days following service of this Order, Stipulating Defendants shall:

A.      Repatriate to the United States all funds, Documents or Assets in foreign countries held either:

1.      by any Stipulating Defendant

2.      for the benefit of any Stipulating Defendant; or

3.      under the direct or indirect control, jointly or individually, of any Stipulating Defendant;

B.      The same business day as any repatriation, (1) notify counsel for Plaintiffs

of the name and location of the Financial Institution or other entity that is the recipient of such funds, Documents or Assets; and (2) serve this Order on any such Financial Institution or other entity;

C.    Provide Plaintiffs with a full accounting of all funds, Documents, and Assets outside of the territory of the United States held either: (1) by the Stipulating Defendants; (2) for the Stipulating Defendants' benefit; or (3) under the Stipulating Defendants' direct or indirect control, individually or jointly; and

D.    Provide Plaintiffs with access to all records of accounts or assets of the Stipulating Defendants held by Financial Institutions whether located outside the territorial United States or otherwise by signing the Consent to Release of Financial Records attached to this Order as Attachment A.

## XIV.  INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Stipulating Defendants are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by the preceding Section of this Order, including, but not limited to:

A.    Sending any statement, letter, fax, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time as all Assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities either of the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as all Assets have been fully

repatriated pursuant to the Section XIII of this Order.

## XV.  FINANCIAL STATEMENTS AND INFORMATION

**IT IS FURTHER ORDERED** that, to the extent not already provided, each Stipulating Defendant shall serve upon counsel for Plaintiffs, within five (5) days of service of this Order:

A.    The form provided as Attachment B, "Financial Statement of Individual Defendant," and for the Corporate Defendant, in the form provided as Attachment C, "Financial Statement of Corporate Defendant." The financial statements shall include all Assets held, whether inside or outside the territory of the United States, shall be accurate as of the date of entry of this Order, and shall be verified under oath. Stipulating Defendants shall attach to these updated financial statements copies of all local, state, provincial, and federal income and property tax returns, along with other attachments and schedules as called for by the instructions to the financial statements; and

B.    The name, address and telephone number of each accountant, financial planner, investment advisor, stock broker or other individual, corporation, or partnership whom they have used for financial, business or tax advice or services, since January 1, 2008.

Plaintiffs acknowledge receipt of the financial statements of Stipulating Defendant Mark Russell Gardner, executed on May 31, 2013, Stipulating Defendant Tammie Lynn Cline, executed on June 1, 2013, and Stipulating Defendant Gardner Cline L.L.C., executed on  May 31, 2013.

## XVI.  PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that the Stipulating Defendants, and their officers,

agents, directors, servants, employees, salespersons, independent contractors, attorneys, members, partners, corporations, subsidiaries, affiliates, successors and assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents, including electronically stored information, that relate in any way to: (1) the business practices or business or personal finances of Stipulating Defendants; (2) the business practices or finances of entities directly or indirectly under the control of Stipulating Defendants; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant.

## XVII.  REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that the Stipulating Defendants are hereby temporarily restrained and enjoined from:

A.      Failing to create and maintain books, records, accounts, bank statements, accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly, and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Stipulating Defendants' Assets; and

B.      Creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing

Plaintiffs with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XVIII.  LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), Plaintiffs are granted leave, at any time after entry of this Order to:

A.     Take the deposition of any Person or entity, whether or not a party, for the purpose of discovering:

1.     The nature, location, status, and extent of Assets of Stipulating Defendants, or their affiliates, subsidiaries, successors, or assigns;

2.     The location of any premises where Stipulating Defendants, directly or through any third party, conduct business operations;

3.     The nature and location of Documents and business records of the Stipulating Defendants or their affiliates, subsidiaries, successors, or assigns;

4.     Compliance with this Order; or

5.     The Stipulating Defendants' whereabouts; and

B.     Demand the production of Documents from any Person or entity, whether or not a party, relating to any of the subjects identified in Section XVIII.A., above. Three (3) days' notice shall be deemed sufficient for any such deposition, five (5) days' notice shall be deemed sufficient for the production of any such Documents, and twenty-four

(24) hours' notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only as electronic data. The provisions of this Section shall apply both to parties to this case and to non-parties. The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of Civil Procedure for the United States District Court for the Middle District of Florida, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made through the means described in Section XXI of this Order.

### XIX.  CREDIT REPORTS

**IT IS FURTHER ORDERED** that Plaintiffs may obtain credit reports concerning the Stipulating Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such report is requested shall provide it to Plaintiffs.

### XX.  DISTRIBUTION OF ORDER BY STIPULATING DEFENDANTS

**IT IS FURTHER ORDERED** that Stipulating Defendants shall immediately provide a copy of this Order to each affiliate, agent, partner, division, sales entity, successor, assignee, officer, director, employee, independent contractor, spouse, Internet web host or master, agent, attorney, and/or representative of Stipulating Defendants and shall, within ten (10) days from the date of entry of this Order, serve upon counsel for Plaintiffs a sworn statement that the Stipulating Defendants have

complied with this provisions of this Order, which statement shall include the names and addresses of each such Person or entity who has received a copy of the Order.

## XXI.  SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by U.S. first-class mail, overnight delivery, facsimile, electronic mail, or personally by agent or employees of Plaintiffs, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any Person, Financial Institution, or other entity that may have possession or control of any property, property right, Asset or Document of any Stipulating Defendant, or that may be subject to any provision of this Order. Service upon any branch or office of any Financial Institution or entity shall effect service upon the entire Financial Institution or entity.

## XXII.  CORRESPONDENCE WITH AND NOTICE TO PLAINTIFFS

**IT IS FURTHER ORDERED** that, for purposes of this Order, all correspondence and pleadings to the Federal Trade Commission shall be addressed to:

> Mary T. Benfield, Esq.
> Federal Trade Commission
> 915 Second Avenue, Suite 2896
> Seattle, Washington
> (206) 220-4472 (telephone)
> (206) 220-6350 (facsimile)

Notice may be provided by email to mbenfield@ftc.gov. All correspondence and pleadings to the State of Florida shall be addressed to:

> Denise Kim, Esq.
> Assistant Attorney General
> Office of the Attorney General
> Consumer Protection Division
> 135 West Central Blvd., Suite 1000
> Orlando, Florida  32801
> (407) 999-5588 (telephone)
> (407) 245-0365 (facsimile)

Notice may be provided by email to Denise.Kim@myfloridalegal.com

### XXIII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over this matter for all purposes.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 6, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record