# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FEDERAL TRADE COMMISSION and STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS,**

**Plaintiffs,**

**-vs-** **Case No. 6:13-cv-789-Orl-37DAB**

**VACATION COMMUNICATIONS GROUP, LLC, GARDNER CLINE L.L.C., SHELDON LEE COHEN, MARK RUSSELL GARDNER and TAMMIE LYNN CLINE,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR ATTORNEY FEES (Doc. No. 103)** |
| **FILED:** | **October 9, 2014** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part.

Brian A. McDowell, Esq., the Receiver (the "Receiver") for Defendants Vacation Communications Group, LLC; Gardner Cline L.L.C.; Sheldon Lee Cohen, individually and as an owner, officer, or manager of Vacation Communications Group, LLC, and d/b/a Universal Timeshare Sales Associates and M.G.M. Universal Timeshares (the "Receivership Defendants"), moves for an order approving and authorizing payment from the assets of the receivership estate of the fees and

expenses of the Receiver, incurred from May 6, 2013 (leading up to the filing of the case on May 20, 2013) through October 9, 2014.

According to the papers filed, the Receiver seeks fees of $96,838.00 and costs of $4,549.27, for a total of $101,387.27. Doc. 103. The papers reflect that the Receiver has only been able to recover $7,740.77 from bank accounts of Gardner Cline, LLC. Doc. 103 at 12. A substantial amount of time was devoted to trying to locate Sheldon Cohen, Cohen's businesses, and the assets of Cohen, who was alleged to be in the Dominican Republic; a warrant for Cohen's arrest for civil contempt was eventually issued, though he has not been located. Doc. 103; Doc. 79. Although the Motion does not contain a Local Rule 3.01(g) certificate, the Certificate of Service indicates that counsel of record in this matter received notice of the request and a copy of the motion was mailed to Sheldon Cohen at an address in the Dominican Republic; no opposition papers have been filed. For the reasons set forth herein, it is **respectfully RECOMMENDED** that the motion be **GRANTED** and the Receiver be reimbursed for his fees and costs up to the total amount recovered thus far, *i.e.*, **$7,740**.

**I. Background**

According to the motion and docket, on May 20, 2013, Plaintiffs Federal Trade Commission ("FTC") and the State of Florida ("Plaintiffs") commenced this action against the Receivership Defendants and individual defendants alleging violations of the Federal Trade Commission Act, 15 U.S.C. §§ 6101-6108; the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes (2012); and the Florida Timeshare Resale Accountability Act, Section 721.205(2), Florida Statutes (2012). Doc. 1. Generally, the claims of the Plaintiffs were that Defendants misrepresented to customers the existence of buyers for their timeshare intervals; and Defendants telemarketed to customers who had enrolled in the Do Not Call Registry.

Also on May 20, 2013, District Judge Dalton issued an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver and Other Equitable Relief, and Order to Show Cause

Why Preliminary Injunction Should Not Issue (the "TRO"). Doc. 9. The TRO appointed Mr. McDowell as Receiver of the Receivership Defendants. Docs. 7, 9.

After a hearing on June 5, 2013, the Court entered a Preliminary Injunction (Doc. 26 and 27), and appointed Mr. McDowell as the permanent receiver for the Receivership Defendants. On June 12, 2013, the Receiver filed his First Report of Receiver summarizing the actions of the Receiver from May 20, 2013 through June 6, 2013. Doc. 36. As spelled out in the Receiver's Report, pursuant to the TRO, on May 22, 2013, the Receiver attempted to take possession of the business of Receivership Defendants, but learned that "a substantial majority of the revenue generated by Receivership Defendants was generated as a result of telemarketing that occurred in the Dominican Republic" and Cohen and his accounts were situated in the Dominican Republic. *Id.*

The TRO and the Preliminary Injunction set forth the obligations and duties of the Receiver, including the submission of periodic reports and applications for payment. The Court directed the Receiver to "conserve, hold, and manage all Assets of the Receivership Defendants and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Receivership Defendants" and "[p]revent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants." Docs. 9, 27. The orders also provided, as to the Receiver's compensation, the Receiver was entitled to "reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred." Docs. 9, 27 at 21-22. On October 9, 2014, the Receiver filed his motion for approval and payment of fees and expenses incurred from inception of the Receivership through the date of the Motion for Fees. Doc. 103. On the same day, the Receiver filed his Final Report. Doc. 104.

On July 2, 2013, the Receiver filed his Motion for Contempt Against Cohen for Failing to Comply with this Court's Order and Preliminary Injunction (the "Motion for Contempt") Doc. 50. On July 16, 2013, Judge Dalton entered his Order granting the Motion for Contempt and setting a hearing for September 6, 2013 for Cohen to show cause as to why he should not be held in civil contempt for failure to comply with the requirements of the Order and Preliminary Injunction entered against him. Doc. 51. On September 18, 2013, Judge Dalton entered an Order finding Cohen in civil contempt (Doc. 79), and issued a bench warrant for Cohen's arrest. Doc. 80.

On June 16, 2014, Judge Dalton entered a Final Order for Permanent Injunction and Other Equitable Relief as to Defendants Gardner Cline, LLC ("GC, LLC"), Mark Russell Gardner, and Tammie Lynn Cline, and Default Judgment as to Defendants Cohen and Vacation Communications Group, LLC. Doc. 102. In the Final Order, the Receiver was directed to prepare and submit a final report describing the Receiver's activities as to the Stipulating Corporate Defendant and a final report describing the Receiver's activities as to the Defaulting Receivership Defendants for the period of June 7, 2013 - October 9, 2014. Doc. 102. The Receiver's Final Report states that the only money received was $7,740.77 from the account of Defendant GC LLC; no other amounts were received from any other Receivership Defendant, and the Receiver did not recover any physical assets[1]. Doc. 104 at 3.

The Receiver states in the Final Report that he has continued his efforts to recover funds located in the Dominican Republic and engaged local counsel to assist, but to date none of these institutions have responded confirming they are holding any assets on behalf of any of the Receivership Defendants, and, despite his efforts, no other assets or monies have been recovered from any other Receivership Defendant. Doc. 104 at 4. The Receiver sought and obtained a warrant for

---

[1]Despite the passage of an additional six months since the Motion was filed on October 9, 2014, no notice has been filed that Cohen has been located, though the Receiver met with the FBI and Homeland Security to enlist their assistance.

Cohen but, despite diligent search efforts by the Receiver and the Federal Trade Commission, Cohen was never located or apprehended; the Receiver believes that Cohen has the crucial information necessary to locate the large percentage of funds and other assets that should be included in the Receivership Estate. *Id*. The Receiver states that "[a]fter payment of any subsequent award for fees and costs, the remaining funds will be distributed to the Federal Trade Commission." *Id*.

**II. Applicable Law**

The Receiver is entitled to reasonable compensation and expenses, pursuant to the Order of appointment. The Court has traditionally determined reasonableness by utilizing the familiar lodestar approach, calculating a reasonable hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., S.E.C. v. Aquacell Batteries, Inc.*, No. 6:07–cv–608–Orl–22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan 31, 2008); *F.T.C. v. Peoples Credit First*, *LLC*, No. 8:03-cv-2353-T-17TBM, 2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006) *(citing Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Norman v. Hous. Auth*., 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Similarly, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp*., 314 B.R. 250, 271 (S.D. Fla. 2004).

In awarding attorney's fees, a Court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Part of "determining the nature and extent of the services rendered," however, includes an analysis as to the reasonableness of the services rendered, bearing in mind the nature of a receivership. As the Supreme Court has noted:

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness.

> . . . The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).

The Receiver and all professionals must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary irrespective of the amount of money in the receivership estate. *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4. After all, "[n]o receivership is intended to generously reward court-appointed officers." *S.E.C. v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)). This is particularly true when the receivership estate will not recover sufficient assets to pay full restitution to the victims of the fraud or misconduct alleged in the complaint. *SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, at *3 (M.D. Fla. Jan. 31, 2008).

The factors in determining the reasonableness of a receivership fee may include: (1) the results achieved by the Receiver; (2) the ability, reputation and professional qualities of the Receiver necessary for the job; (3) the size of the Estate and its ability to afford the expenses and fees; and (4) time required to conclude the receivership. *See Moody, supra*, 374 F.Supp. 465, 480-83. In the end, "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant."' *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (*quoting S.E.C. v. Moody, supra*).

**III. Analysis**

The Receiver in this case is entitled to reasonable compensation; unfortunately, though, the Receiver has been unable to recover the millions Plaintiffs allege were defrauded by Defendants. Although the Receiver has diligently worked to track down the assets of the Receivership Defendants, he has been foiled by Cohen and his apparent off-shore operation from the Dominican Republic.

***The complexity of the problem and the results achieved***

The Receiver contends that the asset investigation and seizure issues were typical of a receivership, but Cohen's presence outside of the United States and the location of assets of Cohen's businesses outside of the United States presented unusual issues. As set forth in the papers and in the Receiver's Reports, although the Receiver attempted to secure the Receivership Defendants' business premises, these efforts were futile because the business location in Sanford had been abandoned and he was unable to track down Cohen or his accounts in the Dominican Republic.

The Receiver also contends that his skills and experience in the areas of fraud, FTC unfair and deceptive practices issues, financial transactions, and asset investigations and preservation were beneficial in this case. Although the Receiver took the actions routinely undertaken by experienced Receivers in the marshaling of assets and management of businesses in receivership, he was only able to recover $7,740.33 from the account of Gardner Cline LLC. Doc. 103 at 11.

As the Receiver points out, a substantial amount of time was devoted to trying to locate Cohen, Cohen's businesses, and Cohen's assets, all of which were alleged to be in the Dominican Republic. Doc. 103. Pursuant to the TRO, on May 22, 2013, the Receiver attempted to take possession of the business of the Receivership Defendants, accompanied by FTC counsel, investigator and a computer forensic examiner, attorneys and investigators of the Office of Florida Attorney General, and several members of the Seminole County Sheriff's Office. Doc. 36. The Receiver was advised that the business of the Receivership Defendants had been operating in that location until approximately one month before, when they abandoned the business premises, and left no records, electronic equipment, or other property; thus, he determined the operation at that location had ended. *Id*.

The Receiver also obtained an address for Defendant Cline's new business location; interviewed an individual who identified himself as a "franchisor" of Cline's new business; and conducted a brief interview of Cline regarding Receivership Defendants and her current business

enterprise. Doc. 103. The Receiver determined Cline's new business was not connected to the business described in the Complaint. *Id*. He interviewed Gardner and Cline for information regarding Cohen, VCG, GC LLC, and other business ventures related to Defendant Cohen, who was believed to be in the Dominican Republic. *Id*. In addition, the Receiver emailed copies of the TRO to the customer service email addresses for VCG and Universal Timeshare Sales Associates, prepared for and attended the Preliminary Injunction hearing, attempted telephone conferences with customer service representatives at both VCG and Universal Timeshare Sales Associates, and advised personnel of both VCG and Universal Timeshare Sales Associates of the lawsuit and requirements of businesses under the TRO. *Id.*

Based on the Receiver's investigation into Receivership Defendants' business activities, he learned that several Defendants were involved with the telemarketing aspect of the business and had placed calls to existing timeshare owners through leads that were provided by Mr. Cohen. Doc. 36. After customers were solicited and indicated an initial interest, they were transferred to personnel located in the Dominican Republic, and customers' credit cards were charged by personnel working under Cohen's direction in the Dominican Republic; a substantial majority of the revenue generated by Receivership Defendants was generated as a result of telemarketing that occurred in the Dominican Republic. *Id.* The Receiver redirected the Receivership Defendants' websites to websites controlled by the Receiver, and subpoenaed SunTrust Bank in connection with accounts held by Gardner Cline L.L.C. to investigate the source of inbound wire transfers to the Gardner Cline L.L.C. account. *Id*. At that time, it was unclear whether the business operations which occurred in the Dominican Republic were continuing. *Id.*

The Receiver contacted BPOP, Inc., the holding company of Banco Popular, a possible Dominican Republic bank for Cohen, as well as Western Union, in an effort to locate domestic funds of Cohen and his businesses, and gave notice of the TRO to all Dominican Republic banks. Doc. 103.

In an effort to track down and recover funds, the Receiver reviewed VCG Nevada corporation documents for information as to corporate officers and offices. *Id*. The Receiver also investigated possible Dominican Republic counsel to assist Receiver in performance of his duties as to Cohen and his businesses and assets and conferred by telephone several times with them regarding notice to Cohen, filing of this Court's papers with Dominican Republic courts, and seizure of Receivership Defendants' assets. *Id*. He conferred with Plaintiffs regarding translation of the Complaint and Preliminary Injunctions into Spanish for Dominican Republic courts and banking and insolvency laws; and he reviewed documents received from The Clearing House Payment Co. LLC. as to wire transfers made to GC LLC from Dominican Republic bank accounts. *Id*. When these efforts were not fruitful, the Receiver had a Motion for Contempt prepared and filed against Cohen and attempted to locate Cohen's office in Miami, Florida. *Id*.

It is clear in this case that the Receiver has expended a great deal of time and energy but was unfortunately unable to secure a larger result.

***The ability of the Estate to afford the fees***

The most significant issue in awarding the Receiver his fees in this case is that the amount recovered is so small that *any* fee award will be far less than the fees incurred, unless Cohen is unexpectedly located by law enforcement, his accounts can be accessed, and the assets recovered. In this case, the Receiver learned early in the Receivership that Cohen was the driving force behind the continuing fraud, the business in Florida had closed, and the accounts were in the Dominican Republic. The Receiver spent 200 hours total continuing the search for Cohen, but once the Receiver suspected in summer of 2013 that Cohen and his accounts were located in the Dominican Republic, he sought a contempt finding (Doc. 50) and requested the issuance of a warrant for Cohen on civil contempt charges. Unfortunately, Cohen has still not been located. The Final Order has been entered by the District Judge, and it does not appear that any further effort is contemplated by the Receiver.

*See* Doc. 104. However, because the request for an award far exceeds the entirety of the Estate, and the Estate does not have the ability to pay it. Thus, at this stage, the fee can be no more than the total amount recovered..

***The abilities and reputation of the Receiver and the time required***

The Court acknowledges the experience and professional qualifications of the Receiver who has been practicing since 1988. *See* Doc. 103. The Receiver argues that the hourly rates he charged are at or below the customary rates of those charged by receivers of comparable experience and skills from other law firms located in the Middle District of Florida.

In support of his fee request in this case, Receiver lists several cases in which he has served as a receiver and received a significant award. Doc. 103 at 8. In *Federal Trade Commission v. Holloway*, Case No. 3:02-CV-343-J20TEM (M.D. Fla. June 26, 2002), Mr. McDowell was awarded receiver fees of $46,980 for 162 hours at $290 per hour, which was his customary hourly rate at that time; the estate had approximately $343,000. In *Federal Trade Commission v. Anthony W. Andrews*, Case No. 6:00-cv-1410-Orl-28 (M.D. Fla.), the receiver was awarded fees of $13,600 for 68 hours at an FTC-agreed rate of $200 per hour (compared to his $250 customary hourly rate) when the receivership estate had approximately $575,000. In the most recent case the Receiver cites, *Federal Trade Commission v. Direct Benefits Group, LLC*, Case No. 6:11-cv-1186-ORL-28TBS (M.D.Fla. Aug. 23, 2013), Judge Smith entered a Report and Recommendation that the receiver and his counsel be awarded requested fees of $46,368.00 for 96.6 hours of work based on hourly rates between $210 and $400 – rates agreed to by the FTC; the amount collected in that case totaled $1,454,904. These three cases serve to guide the Court in determining a reasonable hourly rate for the Receiver's work; however, with the significant recoveries achieved in each case, they are easily distinguished from the case at hand.

The oldest case the Receiver cites, *Federal Trade Commission v. Metro Data*, Case No. 6:96-CV-641-0RL-22-DAB, (M.D. Fla. 2001), is the one most directly on point: Mr. McDowell served as the receiver in that case for five years, but total funds collected in the case were only $864; as the cost to prepare the motion for fees would have exceeded available funds, he chose not to seek any compensation for his five years of service. Similarly, in this case, the Receiver has managed to recover only $7,740, although his fee requested is $96,838.

Mr. McDowell seeks reimbursement for all of his time, *i.e.*, 201.7 hours of his time (but not that of his counsel[2]), and at an hourly rate of $480[3], for a total of $96,838. The Receiver also seeks to recover his full costs[4] of $4,549.27, for a total award of $101,387.27. Doc. 103.

The Fee Motion is somewhat confusing in that the Receiver admits that he recovered a limited amount in comparison to the fee request, admittedly making the case akin to a contingency fee case, yet he seeks to have Court authorize reimbursement for the full 201.7 hours of his time. As explained above, at this juncture, the Court may only authorize a fee up to the amount recovered. The Court recognizes that there may be issues as to block billing[5] and proportionality of the effort expended to the results obtained, but they need not be determined at this time since the Receiver should be

---

[2]The Receiver represented in the Final Report that the Receiver and his retained counsel had incurred fees in excess of $200,000. Doc. 104 at 4.

[3] In a letter to the FTC prior to the filing of this case (not provided to the Court), the Receiver stated that he and his attorneys at Holland & Knight would bill at their customary hourly rates but that the blended hourly rate for which fees would be sought would not exceed $400. Doc. 103 at 13. However, because the Receiver is seeking to be reimbursed for only his time, and his hourly rate is $480, it is not a "blended rate" of $400. Because the Receiver will be limited to the amount collected, which is far below the fee amounts incurred, the Court need this issue. *See, e.g., Federal Trade Commission v. Direct Benefits Group, LLC*, Case No. 6:11-cv-1186-ORL-28TBS (M.D.Fla. Aug. 23, 2013) (discussing hourly rates between $210 and $400 – agreed to by the FTC).

[4]The Receiver has provided very little information with respect to a number of the costs claimed even though, generally, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC,* 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp*., 314 B.R. 250, 271 (S.D. Fla. 2004).

[5]There are a number of block billing entries in increments of three, four, or five hour blocks, without precise descriptions breaking out the individual activity, many of which say, "review status of" various items in the case, and lack specificity. *See, e.g., FTC v. Innovative Wealth Builders, Inc*., 2013 WL 4500471, *3 (M.D.Fla. Aug. 22, 2013) (reducing the fees requested by 50% for block billing which refers to the practice of including multiple distinct tasks within the same time entry).

authorized to pay himself the entirety of the amount recovered for his efforts in tracking down the Receivership Defendants, searching for Cohen, and obtaining the arrest warrant for Cohen.

***An appropriate award***

As the Receiver acknowledges, under the unique circumstances of this case, any fee award in this case is effectively a contingency fee because the Receiver's compensation is subject to recovery of assets from which to pay fees. Doc. 103 at 11. Accordingly, it is respectfully **RECOMMENDED** that the motion be **GRANTED** and the Receiver be reimbursed for his fees and costs up to the total amount recovered thus far, *i.e.*, **$7,740**. However, should additional assets be found and the case reopened, his entitlement to the full amount can be fully examined at that time.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 10, 2015.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy